IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CENTRAL PENN DISTILLING, INC.** : | | |
| **d/b/a MASON DIXON DISTILLERY,** : | | |
|     **Plaintiff** | : | No. 1:22-cv-00179 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| **DRAKE'S ORGANIC SPIRITS, INC.,** | : | |
|     **Defendant** | : | |

### MEMORANDUM

Plaintiff Central Penn Distilling, Inc., doing business as Mason Dixon Distillery ("Plaintiff"), commenced this action on February 4, 2022, seeking a declaration that its use of the term "Boxtails" in connection with its boxed cocktail products does not infringe on any valid trademark of Defendant Drake's Organic Spirits, Inc. ("Defendant"). (Doc. No. 1.) Before the Court are Defendant's motions to dismiss Counts II, III, and IV of Plaintiff's amended complaint (Doc. No. 25) and for leave to file under seal an exhibit to its motion to dismiss (Doc. No. 34). For the reasons that follow, the Court will grant in part and deny in part Defendant's motion to dismiss (Doc. No. 25) and grant Defendant's motion for leave to file a document under seal (Doc. No. 34).

### I.     BACKGROUND[1]

Plaintiff is a Pennsylvania-based corporation engaged "in the business of distilling and bottling hand crafted distilled spirits which are offered for sale and advertised throughout the United States and sold extensively through Pennsylvania, as well as parts of the District of Columbia, Alaska, and Nevada." (Doc. No. 11 ¶¶ 1, 6.) In operation for over six (6) years,

---

[1] This background is drawn from the allegations in Plaintiff's complaint, which the Court has accepted as true, as well as exhibits attached to the complaint and matters incorporated by reference or integral to the complaint. See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

Plaintiff "has, since as early as November 4, 2019, marketed and sold its boxed premixed cocktails under the common law mark known as 'Boxtails' and continues to be engaged in the advertising, distribution, and sale of its 'Boxtails' premixed cocktails." (Id. ¶ 8.) Plaintiff offers its Boxtails spirits online and at its physical location, which is in Gettysburg, Pennsylvania. (Id. ¶ 9.) According to its amended complaint, Plaintiff "has invested considerable time, effort, and money into its Boxtails brand," which "is well-known to [its] customers," and "has established significant common law rights in the brand 'Boxtails' in connection with its handcrafted, pre-mixed cocktails, since as early as November 4, 2019." (Id. ¶¶ 10-11.)

In January 2021, Plaintiff received a cease-and-desist letter ("C&D Letter") from Defendant—a Minnesota corporation involved in the sale of pre-mixed, boxed cocktails—in which Defendant stated that Plaintiff's "use of 'Boxtails' for its pre-mixed cocktails infringed upon [Defendant]'s trademark rights to 'DRAKE'S ORGANIC BOXTAILS' and 'BOXTAILS[.]'" (Id. ¶¶ 2, 12.) The letter contained Defendant's "demand[] that [Plaintiff] immediately cease and desist all use of the term 'boxtails' in connection with the sale of [Plaintiff]'s premixed cocktails" and included a "threat[] to take all necessary steps, including bringing an action to cancel any rights [Plaintiff] has in, or otherwise limit its ability to use the 'boxtails' term." (Id. ¶¶ 12-13; Doc. No. 11-1.) The letter stated that Defendant "is the holder of various trademarks related to alcohol and non-alcoholic goods, including extensive rights to use the term 'boxtails' related to goods . . . through the following marks: DRAKE'S ORGANIC BOXTAILS (Reg No. 6,494,935); and BOXTAILS (Reg. No. 6,613,577)." (Id. ¶ 14.)

Defendant applied for the rights to use DRAKE'S ORGANIC BOXTAILS and BOXTAILS by submitting applications to the United States Patent and Trademark Office ("USPTO")—on September 1, 2020, and February 24, 2021, respectively—for the "DRAKE'S

ORGANIC BOXTAILS" and "BOXTAILS" marks.  (Id.)  Because Defendant did not "use[] these brands" until October 30, 2020, at the earliest, Plaintiff alleges that "any rights to the term 'Boxtails' possessed by [Defendant], either at common law or otherwise, did not arise until October 30, 2020."  (Id.)

Plaintiff further alleges that: (1) Defendant's "use of the term 'Boxtails' does not differ in concept from other companies, like [Defendant]"; (2) the "general public's understanding of a 'Boxtail' is that it is a premixed cocktail packaged in a box because of the product's growing popularity and presence in stores and online marketplaces"; and (3) Defendant's "use of the term 'Boxtails' is no different than what the general public's understanding is of the product or how other companies, like [Defendant], produce, market, and sell them to consumers."  (Id. ¶¶ 18-20.)

As exhibits to the amended complaint, Plaintiff has attached advertisements of other companies that its asserts "use the term 'Boxtail' in a similarly descriptive and/or generic manner to the way [Defendant] and [Plaintiff] use the mark."  (Id. ¶ 28.)  Plaintiff avers that "several companies including, but not limited to, 'Boxtail by B&B Beverage Management,' 'Mandatory Spirit' f/k/a Basic Babe, and 'Boxtails,' advertise and produce their own pre-mixed cocktails packaged in a box under the generic name of 'Boxtail.'"  (Id. ¶ 38.)  Plaintiff further avers that "[t]hird parties, consumers, and the media use and understand the word "Boxtail" as the generic name for pre-mixed and packaged alcoholic beverages, which is the drink identified in [Defendant]'s Registration Nos. 6494935 and 6613577."  (Id. ¶ 30.)

Plaintiff alleges that "[t]he term 'Boxtail' does not evoke secondary meaning in consumers' minds because other companies besides [Defendant] have marketed and sold their pre-mixed and packaged alcoholic cocktails in other types of packaging by substituting the word 'cock' in 'cocktail' with the type of packaging that the premixed cocktail is packaged in, such as

'Cantails' and 'Pouchtails.'" (Id. ¶ 38.) According to Plaintiff, Defendant "is selling its products under a name that merely describes what the product is, a pre-mixed cocktail packaged in a box." (Id. ¶ 39.) "By [Defendant] claiming exclusive rights in the designation 'Boxtail,' [Defendant] seeks to prevent [Plaintiff] and others from using the precise and most common designation that identifies a pre-mixed alcoholic cocktail packaged in a box." (Id. ¶ 40.) Plaintiff alleges that it has a "competitive and equal right to use the word and noun 'Boxtail' in a generic sense" to both "specify the nature of its beverages in order to market and sell them to its consumers" and "inform the public what their beverage essentially is." (Id. ¶¶ 41-42.) Plaintiff asserts that, "[i]f [Defendant] is allowed to maintain its registration of 'Boxtails,'" Plaintiff "is and will continue to be[] injured by the Registration because it grants [Defendant] the right to exclude [Plaintiff] and others in the industry from using generic terminology to identify its goods." (Id. ¶ 43.)

Plaintiff further alleges that Defendant's marks "DRAKE'S ORGANIC BOXTAILS" and "BOXTAILS" are "similar to Plaintiff's "'Boxtails' common-law mark" and likely to cause consumer confusion. (Id. ¶ 47.) Plaintiff avers that: (1) Defendant's "marks are confusingly and deceptively similar in meaning and commercial impression to [Plaintiff]'s common-law mark"; (2) "[t]he goods covered by [Defendant] are nearly identical and/or closely related to the goods offered by and used by [Plaintiff] in connection with [Plaintiff]'s common-law mark, which was used prior to [Plaintiff]'s use"; (3) Defendant's "marks so resemble [Plaintiff]'s marks as to be likely, when applied to [Plaintiff]'s marks, to cause confusion, to cause mistake, and to deceive the trade and public who are likely to believe that [Defendant]'s goods have their origin with [Plaintiff] and/or that such goods are approved, endorsed, or sponsored by [Plaintiff] or are in some way associated with [Plaintiff]"; and (4) Plaintiff is "thereby injured by allowing the continued registration of [Defendant]'s marks." (Id. ¶¶ 48-51.)

Based on the above allegations, Plaintiff seeks the following relief: (1) a declaration that it has not and is not infringing on any valid trademark rights of Defendant (Count I); and (2) an order directing the cancelation of Defendant's registered marks on the bases that the marks are (i) generic and merely descriptive (Count II), (ii) "confusingly and deceptively similar in meaning and commercial impression to [Plaintiff]'s common-law mark" (Count III), and (iii) "merely informational and incapable of functioning as a trademark" (Count IV).  (Id. at 5-15.) Defendant filed its motion for partial dismissal of the amended complaint on August 29, 2022, seeking dismissal of Counts II through IV of the amended complaint, along with an amended answer addressing Count I.  (Doc. Nos. 25-26.)  Plaintiff filed a brief in opposition to the motion on September 12, 2022 (Doc. No. 32), and two weeks later, Defendant filed a reply brief (Doc. No. 33).  Defendant then filed an unopposed motion for leave to file an exhibit under seal, with a statement of reasons pursuant to Local Rule 5.8 (cross-referencing Local Criminal Rule 49). (Doc. Nos. 34-46.)  Defendant's motions to dismiss and for leave to file an exhibit under seal are therefore ripe for disposition.

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil

complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

## III.   DISCUSSION

As noted above, Defendant moves to dismiss Counts II, III, and IV of Plaintiff's amended complaint.  Those counts seek cancelation of Defendant's registered trademarks based on three arguments: (1) the marks are generic or merely descriptive (Count II); (2) the marks are likely to cause confusion (Count III); and (3) the marks are functional/informational (Count IV).  (Doc. No. 1.)  Defendant urges the Court to dismiss: (1) Count II because the term BOXTAILS is not generic; (2) Count III because cancelation of a registered trademark is not an available remedy for a "senior common law mark"; and (3) Count IV in light of the presumption of distinctiveness afforded to Defendant's registered marks and, further, because Plaintiff has not alleged any facts suggesting that its marks cannot function as trademarks.  (Doc. No. 29 at 9-24.)  The Court addresses each count below, after first discussing a preliminary matter raised by the parties.

### A. Withdrawal of Cancelation Claims as to the DRAKE'S ORGANIC BOXTAILS Mark

As an initial matter, while Counts II through IV of the amended complaint seek an order directing the cancelation of both of Defendant's registered trademarks—BOXTAILS and DRAKE'S ORGANIC BOXTAILS—Plaintiff has "withdraw[n] its claim for cancellation as it specifically relates to the DRAKE'S ORGANIC BOXTAILS trademark," as reflected in its brief in opposition to Defendant's motion. (Doc. No. 32 at 19.) Based on Plaintiff's representations, the Court will dismiss Counts II through IV insofar as they seek cancelation of the DRAKE'S ORGANIC BOXTAILS mark and deny as moot Defendant's motion to dismiss those counts. Although Plaintiff, in its briefing, asserts a different claim for "clarification that Defendant's rights to said mark does not include exclusive rights to the term BOXTAILS" (id.), Plaintiff has not requested that relief in its amended complaint. That claim is therefore not before the Court for consideration.

In any event, Plaintiff's claims in Counts II through IV seeking an order directing the cancelation of the BOXTAILS mark, if successful, would provide the clarification Plaintiff seeks. Such an order would necessarily invalidate any claim of Defendant that its rights in the DRAKE'S ORGANIC BOXTAILS mark confer exclusive rights in the BOXTAILS mark. For that reason, and as discussed at the conclusion of this Memorandum, the Court will not grant Plaintiff leave to file a third amended complaint asserting a claim for clarification regarding the scope of Defendant's rights to BOXTAILS, if any valid rights exist, derived from the DRAKE'S ORGANIC BOXTAILS. Having addressed this preliminary matter, the Court turns to an analysis of whether Plaintiff has stated plausible claims for cancelation of the BOXTAILS mark as set out in Counts II through IV.

### B.   Legal Principles Applicable to Plaintiff's Claims

#### 1.   Trademark Law Generally

"Trademark law protects owners in the exclusive use of their marks when use by another is likely to cause confusion." Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc., 186 F.3d 311, 315 (3d Cir. 1999). "Under the common law, trademark rights are appropriated [] through actual prior use in commerce." Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1022 (11th Cir. 1989). As "to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce." See Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 292 (3d Cir. 1991) (citing Tally-Ho, Inc., 889 F.2d at 1023). The "first to use a mark on a product or service in a particular geographic market, [i.e.,] the senior user, acquires rights in the mark in that [particular] market." See Tally-Ho, Inc., 889 F.2d at 1023; see also In re Tam, 808 F.3d 1321, 1328 (Fed. Cir. 2015), as corrected (Feb. 11, 2016), aff'd sub nom. Matal v. Tam, 137 S. Ct. 1744 (2017).

The owner of common law rights in a trademark can, under the Lanham Act, apply for federal registration of the mark with the United States Patent and Trademark Office ("USPTO"). See 15 U.S.C. § 1111 et seq. The Lanham Act defines the term trademark as "any word, name, symbol, or device, or any combination thereof" that a person uses, or "has a bona fide intention to use in commerce and applies to register on the principal register," to "identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." See 15 U.S.C. § 1127. A mark's ability to identify and distinguish one's goods (whether the mark be unregistered or registered) depends on the mark's distinctiveness. See id.

Distinctiveness, in turn, is determined by reference to the "spectrum of distinctiveness," see Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 116 (3d Cir.

2004), i.e., a "scale beginning with generic (which receives no protection), through descriptive (which requires proof that the mark has acquired 'second meaning'), on to suggestive (which implies something about the product or service), and then arbitrary or fanciful (which receives the most protection)," see A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 221 (3d Cir. 2000)). "The stronger the mark, the greater the protection it receives because the greater the likelihood that consumers will confuse the junior user's use with that of the senior user." Elvis Presley Enterps. v. Capece, 141 F.3d 188, 201 (5th Cir. 1998).

### 2. The Court's Authority to Order Cancelation of Registered Trademarks

In "any action involving a registered mark," a federal district court "may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." See 15 U.S.C. § 1119. Cancelation "is proper 'when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party [seeking] cancellation has standing.'" See Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc., No. 12-cv-01850, 2013 WL 12124386, at *3 (C.D. Cal. Mar. 25, 2013) (quoting Int'l Order of Job's Daughters v. Lindeburg & Co., 727 F.2d 1087, 1091 (Fed. Cir. 1984)); see also Betterbox Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 332 n.3 (3d Cir. 2002). Plaintiff here has established standing because it has plausibly alleged that it "will likely be damaged" by Defendant's continued registration of the BOXTAILS mark. See Betterbox Commc'ns Ltd., 300 F.3d at 332. The Court's analysis, infra, therefore relates to whether Plaintiff has plausibly alleged a valid ground upon which the Court can conclude that Defendant's marks should not continue to be registered.

9

  **C.**  **Analysis of Plaintiff's Claims**

    **1.**  **Count II: Generic and Merely Descriptive Marks**

Count II of Plaintiff's amended complaint seeks cancelation of Defendant's registered BOXTAILS trademark on the bases of genericism and mere descriptiveness. A common law owner of a mark can seek to challenge a registered trademark on various grounds. Relevant here, a registered mark that has "become[] the <u>generic</u> name for the goods or services, or a portion thereof, for which it is registered" is subject to cancelation "[a]t any time." <u>See</u> 15 U.S.C. § 1064(3) (emphasis added). Briefly, "a generic term is one 'which function[s] as the common descriptive name of a product class.'" <u>See</u> <u>Holy Spirit Ass'n for Unification of World Christianity v. World Peace & Unification Sanctuary, Inc.</u>, No. 3:18-cv-01508, 2019 WL 3297469, at *7 (M.D. Pa. July 22, 2019) (alteration in original) (quoting <u>A.J. Canfield Co. v. Honickman</u>, 808 F.2d 291, 296 (3d Cir. 1986)). "[A] generic term is essentially the common name for an article." <u>Zurco, Inc. v. Sloan Valve Co.</u>, 785 F. Supp. 2d 476, 488 (W.D. Pa. 2011). "To give an example, 'Cola' is generic because it refers to a product, whereas 'Pepsi Cola' is not generic because it refers to the producer." <u>E.T. Browne Drug Co. v. Cococare Prod., Inc.</u>, 538 F.3d 185, 192 (3d Cir. 2008).

A registered mark may also be canceled if the mark, "when used on or in connection with the goods of the applicant," is "<u>merely descriptive</u>" of the goods. <u>See</u> 15 U.S.C. § 1052(e)(1) (emphasis added). A mark is considered "merely descriptive if it 'consist[s] merely of words descriptive of the qualities, ingredients or characteristics of' the goods or services related to the mark." <u>See</u> <u>In re Oppedahl & Larson LLP</u>, 373 F.3d 1171, 1173 (Fed. Cir. 2004) (quoting <u>Estate of P.D. Beckwith, Inc. v. Comm'r of Patents</u>, 252 U.S. 538, 543 (1920)). Merely descriptive marks, unlike generic marks, are nonetheless eligible for registration if they "ha[ve] become distinctive of the [registrant's] goods in commerce," 15 U.S.C. § 1052(e)(1), which occurs when

10

a mark "acquires secondary meaning," see Times Mirror Mags., Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 167 (3d Cir. 2000).[2]

Here, Plaintiff has adequately pleaded that the term BOXTAILS is or has become generic and/or merely descriptive. There is no bright-line rule for evaluating the sufficiency of claims for registration cancelation on these two grounds, but as courts have stated time and again, the "categorization of a mark as generic, descriptive, or otherwise is usually a factual issue for the jury." See Zurco, Inc. v. Sloan Valve Co., 785 F. Supp. 2d 476, 488 (W.D. Pa. 2011); see also Jamie Flack, LLC v. Rustique Speciality Gifts, LLC, No. 3:16-cv-01679, 2016 WL 6821965, at *4 (M.D. Pa. Nov. 18, 2016) (citing E.T. Browne Drug Co. v. Cococare Prod., Inc., 538 F.3d 185, 192 (3d Cir. 2008) (stating "[w]hether 'Cococare Butter Formula' is generic or descriptive, and whether that term has acquired secondary meaning, are questions of fact")).[3]

Indeed, marks that are neither generic nor merely descriptive can become generic/merely descriptive over time. See 15 U.S.C. § 1064(3); Park N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 199 (1985) (noting that a mark can "become merely descriptive"). As some examples, the terms "'aspirin' and 'cellophane,'" which were once arbitrary marks capable of "indicating the source of the goods," became generic over time. See Q-Tips, Inc. v. Johnson & Johnson, 108

---

[2] Whether a mark has acquired secondary meaning turns on various factors, including: "(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion." See Commerce Nat'l Ins. Services, Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000).

[3] See also Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 929 (9th Cir. 2005) (stating that "[w]hether a mark is generic is a question of fact" (quoting Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 840 (9th Cir. 2001)); In re Oppedahl, 373 F.3d at 1173 (noting that "[w]hether a mark is 'merely descriptive' is a question of fact"); Fragrance Net.com, Inc. v. Les Parfums, Inc., 672 F. Supp. 2d 328, 330 (E.D.N.Y. 2009) (holding that the "determination of whether [registered trademarks] are generic marks will require a fact-specific inquiry that is inappropriate at the motion to dismiss stage").

F. Supp. 845, 863 (D.N.J. 1952), aff'd, 206 F.2d 144 (3d Cir. 1953), and modified, 207 F.2d 509 (3d Cir. 1953).  Similarly, the terms "brassiere," "escalator," "thermos," "yo-yo," and "dry ice" were "former trademarks that have become generic terms" as to the products to which they pertained.  See Ty Inc. v. Softbelly's Inc., 353 F.3d 528, 532 (7th Cir. 2003).

The factual nature of the determination whether a mark is generic or merely descriptive follows from the standards that apply to that determination.  A term's genericness depends on whether "the primary significance of [the] term in the minds of the consuming public is the product or the producer."  See Zurco, Inc., 785 F. Supp. 2d at 488 (quoting A.J. Canfield Co., 808 F.2d at 296).  Evidence "of the public's understanding of the term [at issue] may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers, and other publications," although "direct consumer evidence," such as "consumer surveys and testimony, is preferable to indirect forms of evidence."  See id. (quoting Berner Intern. Corp. v. Mars Sales Co., 987 F.2d 975, 982-83 (3rd Cir. 1993)).  A determination of mere descriptiveness is guided by similar factors, see Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc., 906 F.3d 965, 974 (Fed. Cir. 2018), and involves an inquiry into the "commercial impression that a mark conveys [] viewed through the eyes of a consumer," see DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd., 695 F.3d 1247, 1253 (Fed. Cir. 2012); see also E.T. Browne Drug Co. v. Cococare Prod., Inc., 538 F.3d 185, 199 (3d Cir. 2008) (stating that whether "mark is merely descriptive or has acquired secondary meaning depends on non-exhaustive list of factors").

Defendant raises several arguments in support of its claims that BOXTAILS is neither generic nor descriptive, none of which are availing.  Defendant argues that because BOXTAILS is not listed in any dictionary, it cannot be generic.  (Doc. No. 29 at 10-11.)  But whether a term

is listed in dictionaries is but one of many factors that bear on the highly fact-intensive nature of the distinctiveness determination.[4]  See, e.g., Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 407 (6th Cir. 2002) (noting that "[d]ictionary definitions are merely one source from which genericness may be proven").  Defendant also argues that Plaintiff "does not allege any evidentiary basis" to support its claims of genericism (Doc. No. 29 at 11), but Plaintiff need not set forth an evidentiary basis at this time and need only sufficiently plead that BOXTAILS is (or has become) the generic name for the relevant goods.

Finally, Defendant argues that although Plaintiff's allegations include examples of other companies' uses of BOXTAILS or similar marks (all in an attempt to establish genericness), one of the companies has entered into a confidential settlement agreement with Defendant according to which the company agreed to cease using the term BOXTAILS "as an appellation of source,"[5] and the Australian and United Kingdom entities referenced in the amended complaint have acquired registered trademarks to the terms BOXTAILS and UK BOXTAILS, respectively, based on proof of distinctiveness.  (Doc. No. 29 at 14-16.)  Defendant, however, does not point to any authority for the proposition that such a settlement agreement establishes non-genericism,

---

[4] Defendant implicitly acknowledges this fact: it cites to Gimix, Inc. v. JS & A Grp., Inc., 699 F.2d 901 (7th Cir. 1983), a case involving a motion for summary judgment, for the proposition that "the term 'auto page' was not generic in part because it did not appear in any dictionary." (Doc. No. 29 at 11) (emphasis added).

[5] It is in this connection that Defendant filed its related, concurred-in, pending motion for leave to file a document—the settlement agreement—under seal.  (Doc. No. 34.)  The Court will grant Defendant's motion under In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., 924 F.3d 662, 672 (3d Cir. 2019), given that the motion is concurred-in and sets forth sufficient grounds to warrant sealing under In re Avandia.  The Court notes, however, that its evaluation of a motion to dismiss is generally limited to allegations in the complaint, exhibits thereto, and matters incorporated by reference or integral to the complaint, see supra at n.1, and neither Defendant's sealing motion nor the statement of facts submitted in support of it indicate the reasons for which Defendant believes the Court can consider the settlement agreement.  (Doc. Nos. 34, 36.)  In any event, assuming the parties agree that the Court can, in fact, consider the settlement agreement at this stage, the agreement's contents do not alter the Court's conclusions regarding Defendant's motion to dismiss.

nor has Defendant cited any authority for the proposition that foreign trademark registrations conclusively rebut any claim of genericism regarding the same or similar terms in the United States. Accordingly, the Court rejects Defendant's arguments, concludes that Plaintiff has stated a prima facie claim that the term BOXTAILS is generic and/or merely descriptive,[6] and will accordingly deny Defendant's motion to dismiss Count II.

### 2. Count III: Marks That Are Likely to Cause Confusion

Count III of Plaintiff's amended complaint seeks cancelation of Defendant's registered BOXTAILS mark on the ground that Defendant's use of the mark—when used in connection with the Defendant's boxed cocktails—causes or is likely to cause confusion with Plaintiff's use of the same mark. A "ten-part, [] non-exhaustive inquiry"—commonly referred to as the "Lapp factors"—"guides analysis of likely confusion." See Nichino Am., Inc. v. Valent U.S.A. LLC, 44 F.4th 180, 183 (3d Cir. 2022). The ten Lapp factors "break into three categories," to wit:

> First, facts about the plaintiff's mark, including its distinctiveness. Second, facts about the defendant's actions, including whether the mark was adopted to intentionally compete, overlapping sales and marketing efforts, and how long the competing mark has been in the market without confusion. Third, facts about how consumers deal with both marks. Is there evidence of actual confusion, or do costs and other differences between the goods make confusion unlikely?

See id. at n.4.

As reflected in the non-exhaustive, multi-factor Lapp test, "[t]he Lanham Act's 'likelihood of confusion' standard is predominantly factual in nature." See Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1024 (3d Cir. 2008) (quoting Downing v. Abercrombie & Fitch, 265 F.3d 994, 1008 (9th Cir. 2001)). For that reason, it is generally recognized that a "plaintiff is not

---

[6] Defendant's arguments concerning Count II are targeted at Plaintiff's claims of genericism and not as to Plaintiff's claims of mere descriptiveness. (Doc. No. 29 at 9-17.) In any event, the Court will not now "delve into the issue of whether the [BOXTAILS] mark is merely descriptive as such a level-of-distinctiveness determination is a question of fact that is beyond the Rule 12(b) level of review." See Mazcon, a Kurtz Bros. Co., LLC v. BEG Grp. LLC, No. 1:19-cv-00040, 2020 WL 4583867, at *7 (W.D. Pa. Aug. 10, 2020).

required to prove the likelihood of confusion at the pleading stage," see Interlink Prod. Int'l, Inc. v. F & W Trading LLC, No. 15-cv-01340, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016), that "likelihood of confusion is an issue of fact," see Int'l Mkt. Brands v. Martin Int'l Corp., 882 F. Supp. 2d 809, 814 (W.D. Pa. 2012), and that the "relevancy and weight" of the factors as they bear on "the ultimate issue of likelihood of confusion must be left to the fact-finder," see Taza SystemS, LLC v. Taza 21 Co., LLC, No. 2:11-cv-00073, 2013 WL 5145859, at *14 (W.D. Pa. Sept. 13, 2013); see also Tillery v. Leonard & Sciolla, LLP, 521 F. Supp. 2d 346, 349 (E.D. Pa. 2007) (stating that likelihood of confusion is "ill-suited to a summary judgment determination").

Based on this framework, at least at a general level, it appears that Plaintiff's allegations in Count III suffice to state a claim for likelihood of confusion. Plaintiff asserts that it has acquired common law rights in the BOXTAILS mark, that Plaintiff and Defendant use the mark in relation to the same product, and that Defendant's use is likely to cause consumer confusion.

Yet, as stated herein, supra, Defendant's arguments concerning Count III go beyond a general attack on Plaintiff's allegations of a likelihood of confusion. Defendant challenges Count III on the ground that cancelation is not an available remedy under the facts of this case. The crux of this challenge is that Defendant's registration of the BOXTAILS mark precludes Plaintiff from seeking a wholesale cancelation of the registered mark given the benefits that registration conferred upon Defendant. Defendant notes the benefits provided in 15 U.S.C. § 1115(a), which provides, in part, as follows:

> Any registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration . . . .

15

See id. (emphasis added).[7]

Defendant further notes that its registration of the BOXTAILS mark constitutes "constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection" with the relevant goods. See id. § 1057(c). Nationwide constructive use is particularly relevant, as the "first to use a mark on a product or service in a particular geographic market, the senior user, acquires rights in the mark in that market." See Tally-Ho, Inc., 889 F.2d at 1023. An exception to this general rule arises when a person "has used the mark" prior to the filing of the registration application. See 15 U.S.C. § 1057(c).

Defendant relies on 15 U.S.C. § 1057(c) to argue that it is the "senior user" of the BOXTAILS mark in every geographic market in which Plaintiff had not similarly used the mark prior to Defendant's registration of the mark, and that Plaintiff's claim to senior user rights in the BOXTAILS mark would therefore be limited to the markets in which Plaintiff used the marks prior to Defendant's registration of the mark. (Doc. No. 29 at 17-21.) This argument assumes that Plaintiff acquired senior user, common law rights in the BOXTAILS trademark at some point before Defendant registered the mark, in which case Defendant is the "junior user" of the mark in all areas in which Plaintiff had acquired senior user rights. Defendant, on this basis, cites to the following language from Allard Enterprises, Inc. v. Advanced Programming Res., Inc., 249 F.3d 564 (6th Cir. 2001): "[i]n the case in which a junior user [Defendant at the time] applies for registration . . . , the extent of the senior user/non-registrant's [Plaintiff at the time] territory is frozen as of the date of actual registration to the junior user." See id. at 572; (Doc. No. 29 at 18). Defendant relies on Allard to argue that Plaintiff's territory was therefore frozen

---

[7] Registered marks can become "incontestable" after five years of consecutive and continuous use, subject to various requirements and exceptions, see 15 U.S.C. § 1065, in which case the registration "shall be conclusive evidence" of validity, ownership, and exclusive right to use, see id. § 1115(b). In this case, because Defendant registered its trademark less than five years ago, its registration is not incontestable but nonetheless conferred the benefits described herein.

at the time Defendant registered its mark. Based on these assertions, Defendant contends that Plaintiff cannot seek to cancel the registration of the BOXTAILS mark because Defendant has priority of use with respect to the mark in all markets in which Plaintiff did not use the mark prior to the registration.

While Defendant's contentions are not without support in the Lanham Act's provisions, in the Court's view it would be premature to dismiss Count III on this basis. Priority of use turns on four factors: "(1) the volume of sales of the trademarked product; (2) the growth trends (both positive and negative) in the area; (3) the number of persons actually purchasing the product in relation to the potential number of customers; and (4) the amount of product advertising in the area." See Natural Footwear Ltd v. Hart, Schaffner & Marx, 760 F.2d 1383, 1398-99 (3rd Cir. 1985). The extent to which Plaintiff used the BOXTAILS mark prior to Defendant's registration thereof raises factual issues not appropriate for resolution in connection with a 12(b)(6) motion to dismiss.[8] Accordingly, the Court will deny Defendant's motion to dismiss Count III.

### 3.    Count IV: Functional & Merely Informational Marks

Count IV of Plaintiff's amended complaint seeks cancelation of Defendant's registered BOXTAILS mark on the ground that the mark is incapable of functioning as a trademark and/or merely informational and therefore unprotectable under the Lanham Act. Defendant argues that Count IV is duplicative of Plaintiff's other claims (Doc. Nos. 29 at 22, 33 at 9-11), and nowhere in Plaintiff's opposition papers does it reference or address Count IV (Doc. No. 32). Indeed,

---

[8] To the extent Defendant contends that cancelation of trademark registration is never an available remedy where a common law mark owner seeks cancelation due to a likelihood of confusion, the Court notes that the Lanham Act empowers the USPTO Director to cancel registrations on the ground of likelihood of confusion, see 15 U.S.C. § 1052(d), and federal district courts have "concurrent power" to order registration cancelation, see Beasley v. Howard, 14 F.4th 226, 235 (3d Cir. 2021) (quoting Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 873 (3d Cir. 1992)).

Plaintiff's briefing does not contain the phrases "functional" or "informational," and although Plaintiff references "failure to function claims" generally, the only mention of "function" is in the context of the claims of genericism. (Doc. No. 32 at 5, 8.) Plaintiff's amended complaint, moreover, as to Count IV, asserts that Defendant's registration of BOXTAILS "should [] be cancelled on the basis that [the term] is merely descriptive and incapable of functioning as a trademark pursuant to . . . 15 U.S.C. 1052(e)(1)" (Doc. No. 11 at 13), which provision relates to a mark that is either merely descriptive or deceptively misdescriptive of the relevant goods.

Based on Plaintiff's allegations and its omission of any reference to Count IV in its brief in opposition to Defendant's motion to dismiss, the Court agrees with Defendant that Plaintiff's claim that BOXTAILS cannot function as a trademark is, at bottom, a claim that BOXTAILS is generic. See, e.g., BellSouth Corp. v. DataNational Corp., 60 F.3d 1565, 1569 (Fed. Cir. 1995) (noting that "[a] generic term cannot be registered as a trademark because such a term cannot function as an indication of source"). Further, to the extent Plaintiff argues that BOXTAILS is merely informational, it appears that Plaintiff is claiming that the term is merely descriptive. In any event, merely informational words (or slogans) are distinct from the mark at issue here—a portmanteau consisting of the terms "box" and "cocktails"—in that merely informational words generally consist of words the sole function of which is to convey information and not indicate source (e.g., "All Natural 100% Real Callinectes Crab Gourmet Crabmeat Pasteurized" on crabmeat product and use of the "No More RINOs" as a political slogan). See Informational and commonly used phrases, 1 McCarthy on Trademarks and Unfair Competition § 3:5 (5th ed.). The term BOXTAILS does not fall into this category of marks. The Court will therefore grant Defendant's motion to dismiss Count IV, as the Court concludes that it is redundant of Count II.

### D. Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." See Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)). Here, the Court has concluded that Plaintiff has adequately stated plausible claims under Counts II and III of the amended complaint but that Count IV is redundant of Count II. Because the Court's reason for granting the motion to dismiss Count IV is on the basis of redundancy, permitting Plaintiff to file a second amended complaint to reassert Count IV would be futile.

## IV. CONCLUSION

For the foregoing reasons, the Court will: (1) grant Defendant's motion for leave to file a document under seal (Doc. No. 34); (2) grant in part Defendant's motion to dismiss (Doc. No. 25) to the extent of dismissing Count IV of the amended complaint, as well as Counts II and III insofar as they seek cancelation of Defendant's registered DRAKE'S ORGANIC BOXTAILS mark; and (3) deny Defendant's motion to dismiss Counts II and III insofar as they seek cancelation of Defendant's registered BOXTAILS mark. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania